IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

REGINALD DONELL RICE,      §
    Petitioner,      §
        §
v.        §  No. 3:18-cv-01740-S (BT)
        §
DIRECTOR, TDCJ-CID, §
    Respondent. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Reginald Donell Rice, a Texas prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred the petition to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the District Court should DISMISS Rice's petition.

I.

Rice was charged by indictment in the 265th District Court of Dallas County, Texas, with aggravated assault with a deadly weapon and two enhancement paragraphs alleging: (1) a prior conviction for possession of a controlled substance with intent to deliver; and (2) a prior conviction for an accident resulting in injury/death. *See State of Texas v. Reginald Donell Rice*, Cause No. F-14-76789-R. (ECF No. 24 at 3-4.) He pleaded true to the two enhancement paragraphs, and a jury found him guilty of aggravated assault. (*Id.* at 4.) On October 30, 2015, a jury sentenced Rice to 70 years' imprisonment. (*Id.*)

1

On January 19, 2017, in an unpublished opinion, the Fifth District Court of Appeals modified the trial court's judgment to reflect that Rice pleaded true to the two enhancement paragraphs and affirmed the judgment in all other respects. *See Rice v. State*, 05-15-01428-CR, 2017 WL 359755 (Tex. App.—Dallas Jan. 19, 2017, pet. ref'd). In its decision, the Fifth District Court of Appeals summarized the facts of the case as follows:

> On December 9, 2014, Rice knocked on the door to Room 332 at the Orange Extended Stay Hotel. When McCoy, also known as Dee or Dee-Skeet, answered the door, Rice pulled out a handgun. McCoy tried to shut the door and then turned to run toward the window. Because he was in fear for his life, McCoy jumped from the third-story window. He suffered cuts from the broken glass, broken bones in his heel, and was briefly "knocked out" when he hit the ground. Rice fired fourteen shots into the room, hitting Evans in his stomach, hand, and arm, and Anthony Murphy, also known as Ant, in his stomach and side. Rice then left the room. A video surveillance camera recorded Rice running down the hallway with a gun in his hand.
>
> At trial, McCoy and Evans testified Rice was the shooter. Romerros Jackson, who was in Room 332, but was turned away from the door at the time Evans and Murphy were shot, testified that he heard gunshots immediately after Rice came into the room. Oleshia Brooks, who had left Room 332 just prior to the shooting, testified she passed Rice in the hallway and saw he had something long and black in his hand. She heard a gunshot as she walked down the hallway, turned around, and saw Rice shoot someone who was sitting in a chair. Tommy McKennis, who assisted Murphy prior to medical personnel arriving at the hotel, testified Murphy said that "Reggie" shot him.

*Rice v. State*, 2017 WL 359755, at *1.

On March 29, 2017, the Texas Court of Criminal Appeals (CCA) refused Rice's petition for discretionary review. (ECF No. 24 at 4.)

Thereafter, on May 8, 2017, Rice filed an application for a state writ of habeas corpus challenging his conviction. (*Id.*) On June 6, 2018, the CCA denied the application without a written order on the findings of the trial court without a hearing. (*Id.*)

Rice filed his § 2254 petition (ECF No. 3) in this Court on June 27, 2018. In his petition, he argues:

1.    He is actually innocent;

2.    The State suppressed evidence that Evans and McCoy were offered benefits in exchange for their testimony;

3.    The prosecution abused its discretion by calling him a murderer and a demon during closing argument;

4.    The State presented inadmissible hearsay statements of Soland and Murphy through the testimony of Detective Gamez;

5.    The enhancement allegation was deficient, and he did not receive notice that a deadly weapon finding would be sought;

6.    During trial, he was in leg shackles that were visible to the jury;

7.    A 15-year old photo of him was admitted as evidence even though it was irrelevant.

8.    He was denied due process during his state habeas proceeding because there was no evidentiary hearing;

9.    The surveillance video was erroneously admitted without sound;

10.   Soland's testimony was false;

11.   The jury did not make a deadly weapon finding;

3

12. The indictment was unlawful because McCoy was not shot during the offense, so no assault occurred;

13. He was denied effective assistance of trial counsel because his attorney failed to:
    a. Object to the video without sound;
    b. Object to testimony regarding Murphy as hearsay;
    c. Object to the video as "no evidence";
    d. Admit the incident report into evidence; and
    e. Object to the State's closing argument when he was called a "murderer," and

14. He was denied effective assistance of appellate counsel because his appellate attorney failed to raise the following issues on appeal:
    a. Admittance of the video without sound;
    b. Illegal enhancement based on a prior conviction;
    c. State's improper closing argument;
    d. Sufficiency of the evidence; and
    e. Failure to file a motion for a new trial.

Respondent argues the petition should be denied because it is procedurally barred, in part, and because Rice fails to establish that the state court's rejection of his claims was objectively unreasonable.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, provides:

(d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U. S. C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U. S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

III.

**A.    Unexhausted Claims**

On state habeas review, the CCA found that Rice's third, fourth, fifth, sixth, seventh, ninth, eleventh, and twelfth claims were procedurally barred because they were not raised on direct appeal. (Supp. State Habeas Ct. R. at 7-14.)

Each issue a petitioner raises in a federal habeas writ must have been exhausted. That is, the issue must have been "fairly presented" to the state court. *Picard v. Conner*, 404 U.S. 270, 275 (1971). The exhaustion requirement is not met when new factual claims are made in a federal petition. *Anderson v. Harless*, 459

U.S. 4, 6-7 (1982). If a petitioner fails to exhaust state remedies and the court to which he would be required to present his claims would now find the claims procedurally barred due to the petitioner's own procedural default, "federal courts are barred from reviewing those claims." *Woodfox v. Cain*, 609 F.3d 774, 793 (5th Cir. 2010) (citing *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)). To overcome the procedural bar for failure to exhaust state remedies, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this context, a miscarriage of justice means that the petitioner is actually innocent of the crime for which he was convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

If Rice were to return to state court in an attempt to exhaust, he would be barred from raising these claims. *See Neville v. Drekte*, 423 F.3d 474, 480 (5th Cir. 2005) (stating that "[e]xcept under extraordinary circumstances, Texas law does not permit successive petitions."). Texas law forbids second or successive applications for post-conviction relief if the claims could have been, but were not, raised in a prior state writ unless "no rational juror could have found the applicant guilty beyond a reasonable doubt." Tex. Code Crim. Proc. art. 11.07 § 4(a). Although Rice claims that he is actually innocent, for the reasons addressed below, his freestanding actual innocence claim lacks merit. Because he has failed to show

cause and actual prejudice to overcome the procedural bar, Rice's third, fourth, fifth, sixth, seventh, ninth, eleventh, and twelfth claims are procedurally barred.

## B.    Actual Innocence

In claim one, a freestanding actual innocence claim, Rice argues that he is actually innocent. (ECF No. 3 at 6.) He further argues that his trial counsel failed to present the jury with exculpatory evidence of the "incident detail report" (ECF No. 3 at 19-26), which identified another suspect in different clothing. (*Id.*) He claims that this evidence is material, and if his attorney had presented it to the jury, the outcome of his trial would have been different. (*Id.*)

To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means "factual innocence" and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Where a petitioner asserts his actual innocence, he must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition. *Schlup*, 513 U.S. at 327. A claim of actual innocence may not be a basis for federal habeas corpus relief absent an independent federal constitutional violation. *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

The Court has reviewed Rice's evidence of actual innocence, the "incident detail report," and finds it does not constitute material evidence that would have impacted the outcome of his jury trial. Indeed, Frederick Evans, Devaunce McCoy,

and Oleshia Brooks each testified at Rice's trial and indicated Rice was the shooter, and Evans and McCoy were eyewitnesses. Moreover, even if Rice had presented a persuasive claim of actual innocence, "the Supreme Court [has] made clear that federal habeas relief would only be available if there was no state procedure for making such a claim." *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003). The state provided a forum for Rice to raise a claim of actual innocence before filing his federal habeas petition in this Court.

## C.    *Brady* Violation

In his second claim, Rice argues that the state's witness, DaVaunce McCoy, received a benefit for his testimony. (ECF No. 3 at 6.) Rice claims that the state promised not to revoke McCoy's probation, agreed to show him leniency, and agreed to give him favorable treatment. (*Id.*) According to Rice, evidence of an understanding or agreement regarding a future prosecution is relevant to the witness's credibility, the jury had a right to know about it, and because they did not, it was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*Id.*)

"To establish a *Brady* violation, a defendant must show:  (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *Reeder v. Vannoy*, ____ F.3d ____ , 2020 WL 6145291, at *4 (5th Cir. Oct. 20, 2020) (quoting *United States v. Glenn*, 935 F.3d 313, 319 (5th Cir. 2019) (citation omitted)). Suppressed evidence is deemed material when there is a "reasonable probability" that if the evidence had been disclosed to the defense,

8

the outcome of the proceeding would have been different. *Id.* (quoting *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018)). A "reasonable probability" of a different outcome occurs when the suppressed evidence "undermines confidence in the outcome of the trial." *Id.* (quoting *Turner v. United States*, ____ U.S. ____, 137 S. Ct. 1885, 1893 (2017)).

> As it relates to Rice's *Brady* claim, the state habeas court found:

> Applicant also asserts that the State "suppressed" evidence that Evans received benefits in exchange for his testimony. (Application at 8.) The State questioned Evans about the fact that his felony case had been reduced to a misdemeanor prior to his testimony. (RR-5: 88-89, 121.) The prosecutor in this case did not speak with Evans about this case until after the reduction had already been made and no deal had been made in exchange for Evans' testimony. (RR-5: 88-89, 121.) No evidence was "suppressed" regarding Evans' reduced charge.

> Applicant also asserts that the State "suppressed" evidence that McCoy received a benefit in exchange for his testimony. (Application at 8.) McCoy was subject to the State filing a motion to revoke his probation. However, the State agreed to not file such a motion. (RR-5: 191-192, 201-202.) That evidence was presented to the jury. (RR-5:191-192, 201-202). Thus, the evidence was not "suppressed".

(Supp. State Habeas Ct. R. at 5-6.) The state habeas court's factual findings addressed Rice's second claim. Moreover, Rice fails to come forward with clear and convincing evidence that rebuts the presumption that the state court's factual findings are correct. For the reasons found by the state habeas court, Rice's second claim, based on an alleged *Brady* violation, is meritless.

### D.    State Habeas Proceedings

In his eighth claim, Rice argues that he was denied procedural due process during his state habeas proceeding when an evidentiary hearing was not held. (ECF

No. 3 at 11.) "Infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas relief." *Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir. 1984); *see also Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001) ("[I]nfirmities in state habeas proceeding are not proper grounds for federal habeas relief."); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."). This is so because an attack on the validity of the state habeas corpus proceeding does not impact the validity of the underlying state criminal conviction. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) ("[A]n attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself."). Here, Rice's attack on his state habeas proceeding for failure to conduct an evidentiary hearing is not a viable claim for relief in this federal habeas court. Therefore, Rice's eighth claim lacks merit and should be denied.

## E.    False Testimony

Rice argues in his tenth claim that the state may or may not have been aware that the testimony given by Jessica Soland was false evidence used to convict him. (ECF No. 3 at 12.) According to Rice, Detective Gamez's interrogation interview statement and video statement show: (1) Soland told Detective Gamez that she was given the information about the events of the crime; (2) she did not see anything; (3) she was told Rice was the shooter; and (4) she was told that McCoy had jumped out the window. (*Id.*) Rice claims that this was "false testimony" because Soland did not actually witness the crime, yet her testimony was used to convict him. (*Id.*)

"The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction." *Kinsel v. Cain*, 647 F.3d 265, 271 (5th Cir. 2011) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). To obtain a new trial based on allegations that the government's witness gave false testimony and the prosecutor knew or should have known that the testimony was false, a petitioner must demonstrate: (1) the statements were actually false; (2) the statements were material; and (3) the prosecution was aware they were false. *United States v. Chagra*, 735 F.2d 870, 874 (5th Cir. 1984) (quoting *United States v. Mack*, 695 F.2d 820, 822-23 (5th Cir. 1983)). Perjured testimony is deemed "material" when there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000). A new trial is required when false testimony is given, and it had the reasonable likelihood of affecting the jury's judgment. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

As it relates to Rice's tenth claim, the state habeas court found:

> Applicant has failed to present proof of this allegation. In fact, Soland was not a witness at this trial. (RR-1 1:13). Rather, he merely presents self-serving statements that Soland's testimony was false. Further, he admits that the State "may or may not" have known that Soland's testimony was false. Further, another witness, McCoy, testified at trial and provided the same evidence about which Applicant complains Soland lied.

(Supp. State Habeas Ct. R. at 12-13.) Considering the state habeas court's findings that address Rice's tenth claim, the Court finds that he has failed to demonstrate

11

there was perjured testimony at his trial. Rice has therefore failed to show that there was a Due Process Clause violation.

## F. Ineffective Assistance of Trial Counsel

In his thirteenth claim, Rice argues that he received ineffective assistance of counsel when his trial attorney committed the following errors: (1) a video was used without sound; (2) counsel failed to object to testimony from Detective Gamez about statements made by Anthony Murphy; (3) counsel failed to object to the video as "no evidence" since no crime occurred on the video; (4) counsel failed to introduce exculpatory evidence consisting of the "Incident Detail Report": and (5) counsel failed to ask for a mistrial when the state shifted the burden of proof by calling Rice a "murderer." (ECF No. 3 at 9.)

To succeed on a claim of ineffective assistance of counsel, a petitioner must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 689. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Murray v. Maggio*, 736 F.2d 279, 281-82 (5th Cir. 1984); *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

Additionally, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove prejudice, the court need not address the question of counsel's performance. *Id.* at 697. Merely presenting "conclusory allegations" of deficient performance or prejudice is insufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

Here, trial counsel addressed most of Rice's allegations in an affidavit to the state habeas court, stating:

> Now, I would like to address Mr. Rice's Ground Three of his Application for a Writ of Habeas Corpus that claims Ineffective Assistance of Counsel. In Mr. Rice's first point he claims that the trial attorney failed to object to preserve error for appeal in that video, without sound, should have been excluded from evidence. He believed that the lack of sound would have caused a jury to speculate. On this ground, I believe that Mr. Rice is mistaken on the law. As the attorney, I am still an officer of the court. I can't raise objection that I believe are not merited by the law. As I had previously explained to Mr. Rice. The lack of sound of the video goes to the weight of the evidence and not the admissibility. Throughout the transcript of the trial, I fought to try to keep the video from being admitted into evidence. I knew that the admission of the surveillance video would be damaging to my client and our case. My trial strategy was to get the video excluded through another legal means. We attempted to get it excluded by highlighting the lack of links through chain of custody. We believed that was our best route to keep the surveillance video out of evidence.
>
> In Mr. Rice's second point, he stated that we failed to object to testimony about Anthony Murphy as hearsay. I think that the transcript would reflect differently. Throughout the trial, I objected to

> the state trying to elicit statements made by Anthony Murphy through other witnesses and the detective.
>
> . . .
>
> On the fifth point Mr. Rice states that I failed to object to the video and photographs as "no evidence." I did not feel that this was a proper legal objection to be made in this case concerning these facts.
>
> . . .
>
> In points eight and nine, I don't have the trial transcript to look at but I objected when I believed that it was necessary to protect my client. I know that the transcript will reflect that I made numerous objections and fought some of the points that Mr. Rice brings up.

(Supp. State Habeas Ct. R. at 21-22.) Rice has not rebutted the presumption of correctness afforded to the CCA's factual determinations, including the court's credibility finding in favor of the trial court. 28 U.S.C. § 2254(e); State Habeas Ct. R. "Action Taken" sheet ("DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT WITHOUT HEARING.").

Rice also argues that his trial counsel erred by failing to enter the incident report into evidence at trial. (ECF No. 3 at 9.) However, he fails to demonstrate that this evidence was favorable to his defense. In fact, he presents only his conclusory allegations that he was prejudiced by the failure to include this evidence in his defense.

This claim was specifically addressed by trial counsel in his affidavit to the state habeas court, stating:

> In point number seven, Mr. Rice states that I failed to admit into evidence the "Incident Detail Report." He states that the suspect mentioned in this "Incident Detail Report" he was wearing a blue jack and ran down the hallway. He says that had the jury been given this information there's a possibility of a different outcome of the trial proceedings. First the "Incident Detail Report" is hearsay and not admissible during the trial. Second, it was my trial strategy not to

14

> introduce the report because 23 lines down from the description "Suspect Blu Jacket Ran Down the Hallway" are the lines, "Suspect – Possibly Reginald Rice – BM 5*7* Stocky 210lbs." Mr. Rice is again mentioned as the suspect on the 3rd page of the Incident Detail Report. The State already had numerous witnesses that were saying that Mr. Rice shot at three individuals. I didn't feel that admitting an Incident Detail Report from other calls that mentioned him as the suspect was in the best interest of a successful outcome on his case. I've attached the Incident Detail Report as Exhibit A to my Affidavit.

(Supp. State Habeas Ct. R. at 22.) The state court addressed Rice's claim that he received ineffective assistance of counsel when his attorney failed to present allegedly exculpatory evidence. (Supp. State Habeas Ct. R. at 6-7.) Rice has failed to demonstrate that the state court's findings of fact and conclusions of law were contrary to, or an unreasonable application of Supreme Court law. Accordingly, Rice's thirteenth claim, based on ineffective assistance of trial counsel, should be denied.

## G. Ineffective Assistance of Appellate Counsel

In his fourteenth and final claim, Rice argues that his appellate attorney provided ineffective assistance of counsel by failing to (1) argue admission of the video without sound; (2) argue sufficiency of the evidence; (3) argue the State's improper closing argument; and (4) file a motion for a new trial. (ECF No. 3 at 7-8.)

A defendant is entitled to effective assistance of counsel on direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985). The proper standard for evaluating a claim that appellate counsel was ineffective is the two-prong standard set forth in *Strickland v. Washington. Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see also*

*Blanton v. Quarterman*, 543 F.3d 230, 240 (5th Cir. 2008) ("In reviewing a claim alleging ineffective assistance of appellate counsel we apply the traditional *Strickland* standard."). To demonstrate prejudice in the context of an appellate counsel claim, a petitioner must show a reasonable probability that he would have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Appellate counsel addressed these claims in her affidavit to the state habeas court, stating:

**1. Mr. Rice alleges that I was ineffective because I should have used "unfair prejudice" as an argument against the trial court's admission of video surveillance and photographs taken from the video surveillance.**

Mr. Rice asserts that I "should of (sic) used 1) "unfair prejudice" as a Point of Error upon the objection of the proper predicate, trial attorney objected to the viewing of the video. The video and photographs should of (sic) been excluded because the probative value was outweighed by the danger of unfair prejudice."

The State offered video surveillance and still photographs taken from that video surveillance into evidence during the guilt/innocence phase of trial. (RR5: 75-82; State's Ex. 20, 21-29.) Mr. Rice's trial attorney objected to the admission of the video on grounds that the proper predicate had not been established. (RR5: 78). The prosecutor asked additional questions of the witness and again offered the video into evidence. (RR5:  78-80.) At this point, defense counsel asked to approach the bench. (RR5: 80.) Following this unrecorded bench conference, the trial court stated that both objections were noted and overruled and granted a running objection to anything in reference to the video. (RR5: 80). The record does not contain any information or detail about what "both objections" were.

The trial attorney also objected to the still photographs taken from the video on grounds that the State did not lay the proper foundation for the video. (RR5:  81; State's Ex. 21-29.) The trial court overruled this objection, admitted these nine photographs into evidence, and again noted that defense counsel could have a running objection to anything

in reference to the video and photographs from the video. (RR5: 81-82).

I raised two points of error in Appellant's Brief related to the trial court's admission of the surveillance video and photographs. I asserted that the trial court abused its discretion by admitting the video and the still photographs taken from this video because the State did not establish the proper predicate for their admission, as defense counsel argued at trial. (Appellant's Brief at pp. 29-35.)

Mr. Rice claims that I should have used "unfair prejudice" as a point of error. Specifically, Mr. Rice claims that the video and photographs should have been excluded because the probative value was outweighed by the danger of unfair prejudice. Mr. Rice's assertion that the video and photographs should have been excluded under Rule 403 of the Texas Rules of Evidence. The record does not show that Mr. Rice's trial attorney objected to the admission of the video or photographs on grounds that the probative value of the video and photographs was substantially outweighed by the danger of unfair prejudice. Rather, the trial attorney objected to these exhibits on the grounds that the State failed to establish the requisite predicate.

While the record shows that the trial judge acknowledged that defense counsel made two objections to the surveillance video, the record does not establish what the two objections were. The record does not establish what the running objection was for either the surveillance video or the photographs. The record does not show that defense counsel objected to the video or photographs under Rule 403. Therefore, the error was not preserved for appeal. Because the issue was not preserved, I did not raise it as a point of error in the brief.

## 2. Mr. Rice alleges that I was ineffective because Point of Error 7 should have been "insufficient evidence."

Mr. Rice alleges that I should have raised insufficient evidence in Point of Error 7. During closing argument, the prosecutor stated that one of Mr. Rice's prior convictions involved a "hit-and-run" and that Appellant "left them seriously injured." (RR7: 54). Defense counsel objected to this argument because there was no evidence of any serious injury. (RR7: 54-55). The trial court overruled the objection. (RR7: 55).

The issue was not whether there was insufficient evidence to support the prior conviction. Rather, as defense counsel argued when he objected to the prosecutor's statement, the issue was whether the prosecutor's argument fell within the permissible scope of jury argument. In Appellant's Brief, I argued that the trial court abused its discretion in overruling the objection because the prosecutor's argument was not supported by any facts in the record and, therefore, fell outside the scope of proper jury argument. Specifically, I asserted that there was no evidence suggesting that the prior conviction involved serious injury. (Appellant's Brief at pp. 47-50.) The only evidence of the prior conviction was the judgment, which did not contain any reference to serious bodily injury. Ultimately, the Court of Appeals resolved this point of error against Mr. Rice.

If Mr. Rice is claiming that the evidence was insufficient to support the prior conviction, this was not an issue that I could raise in the direct appeal. First, defense counsel did not argue that the evidence was insufficient to support a finding of true to the enhancement paragraph. Furthermore, the record contains sufficient evidence to support a finding of true to the enhancement paragraph. The State alleged the prior conviction as an enhancement paragraph in Mr. Rice's aggravated assault cases. (CR1: 9, 93, 109; CR2: 9, 66, 72, 91). Mr. Rice pleaded true and signed a stipulation of evidence for the prior conviction alleged in the enhancement paragraph. (RR7: 24-25, 34-35; State's Ex. 62, 63). The trial court admitted this stipulation and the judgment for the prior conviction into evidence. (RR7: 34-35; State's Ex. 62, 63). Therefore, the evidence was sufficient to establish that Mr. Rice had a prior conviction for failure to stop and render aid, and I was not able to raise a viable point of error related to the sufficiency of the enhancement paragraph.

**3. Mr. Rice alleges that I was ineffective for not raising a point of error related to the State's reference to Appellant as "a demon" and a person who "possesses a dark spirit" during closing argument at the guilt/innocence phase of trial.**

Mr. Rice asserts that "Malicious Prosecution of improper arguement (sic), during the course of the guilty phase, called the Applicant a demon and possesses a dark spirit. Should of (sic) been a Point of Error." He claims that the statement shifted the burden of proof to the defense. Mr. Rice also claims that the prosecutor's reference to him as

a murderer violated due process and the right to be free from cruel and unusual punishment.

Mr. Rice claims that I should have raised a point of error related to the prosecutor's reference to him as a "demon" and someone who "possesses a dark spirit." During closing argument at guilt/innocence, the prosecutor asserted that the State's witnesses had criminal records, the offenses happened at a "seedy motel" where there are drug addicts, and "[s]ometimes you have to make a deal with the demon to get the devil." (RR6: 192). Defense counsel objected to this argument "if they're referring to my client as the devil." (RR6: 192). The trial court sustained this objection and defense counsel did not make any other objection or request related to the prosecutor's argument. (RR6: 192). Therefore, because Mr. Rice received the relief his trial attorney requested during trial, I did not raise a point of error in Mr. Rice's brief regarding the prosecutor's reference to him as the devil. TEX. R. APP. P. 33.1(a).

Additionally, Mr. Rice claims that the prosecutor argued to the jury that he "possesses a dark spirit." During closing argument at the punishment phase of trial, the prosecutor argued that "there's a special kind of darkness that lives within Reggie Rice and his time for rehabilitation is long over. There's a special kind of darkness that doesn't follow the rules, that will always test the limits of our society." (RR7: 56.) I did not find anything in the record indicating that the prosecutor specifically stated that Mr. Rice "possesses a dark spirit," as Mr. Rice has asserted in his application. I assume that Mr. Rice is referencing the prosecutor's argument that there is a "special kind of darkness" inside Mr. Rice. (RR7: 56). Defense counsel did not object to this argument. Therefore, the issue was not preserved for appeal and I did not raise a point of error related to the prosecutor's statements.

Mr. Rice also asserts that the prosecutor's reference to him as a murderer violated due process and the right to be free from cruel and unusual punishment. In Point of Error 6, I raised an issue related to the prosecutor's improper jury argument at the punishment phase. Specifically, the prosecutor argued that Mr. Rice was "not legally a convicted murderer, but he is a murderer." (RR7: 53). The trial court sustained defense counsel's objection to this statement and instructed the jury to disregard the statement. (RR7: 53). The trial court denied defense counsel's request for a mistrial. (RR7: 53). In Appellant's Brief, I argued that the trial court's denial of defense counsel's request

for a mistrial constituted an abuse of discretion. (Appellant's Brief at pp. 45-47).

Mr. Rice correctly notes that I did not raise an argument that the reference to Mr. Rice as a murderer violated due process or his right to be free from cruel and unusual punishment. I did not make these arguments in Appellant's Brief because these arguments were not raised by defense counsel at trial or in a motion for new trial. (CR1: 119-23, 140-44; RR7: 52-56, 58-59); TEX. R. APP. P. 33.1(a) (providing the prerequisites for presenting a complaint for appellate review) (*see also Bekendam v. State*, 441 S.W.3d 295, 300 (recognizing that the point of error on appeal must comport with the objection made at trial); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (noting that an objection stating one legal basis may not be used to support a different legal theory on appeal); *Rodriquez v. State*, 459 S.W.3d 184,200 (Tex. App. –Amarillo 2015, pet. ref'd) (noting that a complaint about cruel and unusual punishment is subject to the preservation requirement and finding that the failure to object to the sentence preserves nothing for appellate review). Additionally, Mr. Rice's sentence of thirty-eight years was within the applicable statutory range. *See, e.g., Castenada v. State*, 135 S.W.3d 719, 72 (Tex. App.—Dallas 2003, no pet.) (finding that a sentence within the applicable statutory range is not cruel and unusual). I addressed the prosecutor's improper jury argument in the direct appeal and asserted that the trial court abused its discretion when it denied Mr. Rice's motion for a mistrial, which was the relief defense counsel sought during the trial.

## 4. Mr. Rice alleges that I was ineffective for failing to challenge the sufficiency of the evidence.

Mr. Rice claims that "Counsel failed to challenge the sufficiency of the evidence to support the conviction. (See) Court of Appeals Opinion page (2) footnote: Had counsel presented this error based upon the justices reviewing the Applicant's Appeal, there's a possibility of a different outcome in the Appeal Proceeding." The Court of Appeals's opinion notes in a footnote that because Mr. Rice has not challenged the sufficiency of the evidence the Court would "recite only those facts necessary to address his complaints on appeal." *Rice*, 2017 Tex. App. LEXIS 494, at *2, n. 1. The Court's footnote makes no suggestion as to the viability of a claim of insufficient evidence on appeal.

As Mr. Rice correctly notes, I did not raise a point of error related to the sufficiency of the evidence for either or his convictions. In accordance with my usual practice, I reviewed the record for sufficient evidence to support Mr. Rice's convictions. After reviewing and evaluating the record, I determined that I would not raise a point of error related to the sufficiency of the evidence in his cases.

Although most of the witnesses in Mr. Rice's case had criminal histories and some were high on drugs the night of the offenses, several testifying witnesses identified Mr. Rice as the shooter in these two cases. The two complaining witnesses Frederick Evans and Devaunce McCoy, testified at Mr. Rice's trial. In pertinent part, Evans testified that he was on the couch in McCoy's room when the door opened and "it was Reggie with a gun." (RR5: 99). He testified that Reggie shot him twice. (RR5: 100). He also testified that he told the lead detective that "a dude named Reggie" shot him. (RR5: 123). Evans identified Mr. Rice in open court as the person he knew as Reggie. (RR5: 91-92).

McCoy also identified Mr. Rice in open court as the person he knew as Reggie Rice. (RR5: 166-67). McCoy testified that the night of the offenses he answered the door of the motel room three times, and on the third time he told Mr. Rice to leave. (RR5: 176-77). McCoy testified that Mr. Rice acted as though he was going to leave, but turned around and pulled out a gun. (RR5: 177, 188). McCoy tried to shut the door of the room and took off running towards the back of the room. (RR5: 177). McCoy heard gunshots, and he jumped out of the room's window and landed on the concrete. (RR5: 177-78).

In addition to the complaining witnesses' testimony identifying Mr. Rice as the shooter, Oleshia Brooks testified that she saw Mr. Rice shoot someone. (RR5-247-48). She went to police headquarters for a police interview and identified Mr. Rice as the shooter in the photographic lineup. (RR5: 250; RR6: 155; State's Ex. 59). Brooks also identified Mr. Rice in open court as the person she knew as Reggie Rice. (RR5: 236-37).

Because there was witness testimony identifying Mr. Rice as the shooter in this case, the outcome turned on whether the jury believed these witnesses. I did not raise a point of error related to the sufficiency of the evidence because Mr. Rice's identity as the shooter depended on the jury's determination of the credibility of the witnesses who testified.

21

**5. Mr. Rice alleges that I was ineffective for failing to file a motion for a new trial based on Mr. Rice's discovery of evidence that constituted constitutional error.**

Mr. Rice claims that I was ineffective because I failed to file a motion for new trial. Specifically, he asserts that he "has discovered new evidence that constituted Constitutional Error to the conviction and punishment. #1) 'Incident Detail Report Document' was never presented or viewed before the jury, of another suspect in a blue jacket running down the hallway." Mr. Rice claims that had this Incident Detail Report been presented in a motion for new trial there is a possibility that the trial court would have determined beyond a reasonable double that the error contributed to his conviction and punishment and would have granted a new trial.

I did not file a motion for a new trial, as Mr. Rice correctly states. Trial counsel did not file a motion for a new trial. Mr. Rice filed a motion for new trial himself on November 6, 2015, six days after the judgment date. (CR1: 119-23). This motion for new trial alleges that he was denied a jury charge of an affirmative finding of a deadly weapon in violation of his right to due process. His motion also alleges that he was denied the right to confront his accuser. The trial judge denied his motion for new trial on November 16, 2015. On December 4, 2015, Mr. Rice filed another motion for new trial. (CR1: 140-44). This second motion for new trial references an incident detail report. Mr. Rice filed this second motion for new trial after the judge ruled on this first motion for new trial.

Although I was assigned to Mr. Rice's cases within the thirty-day deadline for filing a motion for new trial, I did not have any information before me at that time that would have warranted the filing of a motion for new trial. The first time Mr. Rice mentioned his concerns about the incident detail report directly to me was in his letter to me dated June 28, 2016, 235 days after he filed his first motion for new trial and well after the thirty-day deadline for any motion for new trial or amended motion for new trial. TEX. R. APP. P. 21.4(a). Mr. Rice's second motion for new trial filed December 4, 2014, in which he mentions an incident detail report, was not timely because he filed it after the trial court ruled on his November 6, 2015, motion for new trial. TEX. R. APP. P. 21.4(a).

Mr. Rice is correct that the incident detail report was not admitted into evidence during his trial. However, the record contains a

document reflecting that the State tendered to trial counsel a "DPD Incident Detail Report" containing eight pages. (CR1: 102-04; CR2: 73-75.) This document was filed on October 29, 2015, one day prior to the judgment date in Mr. Rice's cases and is signed by Mr. Rice, trial counsel, and the assistant district attorney who represented the State in these cases. (CR1: 102-04; CR2: 73-75). Additionally, the record reflects that on October 29, 2015, in open court outside the jury's presence, the parties discussed this document. (RR6: 6-7). Assuming that Mr. Rice is not referencing a different report, the Incident Detail Report he references in his application for a writ of habeas corpus would not constitute newly discovered evidence that would support a motion for new trial. Any questions regarding the decision to present the details contained in the incident detail report or the report itself would be better answered by trial counsel as it appears that report was available to defense counsel during trial.

(Supp. State Habeas Ct. R. at 40-46.) The state habeas court rejected this claim, and Rice fails to demonstrate that the state court's decision regarding this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 89, 98 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."). Rice's fourteenth claim should therefore be denied.

## H . Evidentiary Hearing

Finally, Rice requests an evidentiary hearing to address his petition. (ECF Nos. 4, 26.) A court may hold an evidentiary hearing when the petitioner demonstrates: (1) a claim relies on a new, retroactive rule of constitutional law that was previously unavailable; (2) a claim relies on a factual basis that could not have been previously discovered by exercise of due diligence; or (3) the facts underlying

23

the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have convicted the petitioner. 28 U.S.C. § 2254(e)(2). Here, Rice's claims lack merit on their face, so no additional development at an evidentiary hearing is warranted. Therefore, Rice's request for an evidentiary hearing is denied.

### IV.

For the foregoing reasons, the Court should DISMISS with prejudice Rice's § 2254 petition.

Signed November 19, 2020.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).